UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
UNITED STATES OF AMERICA,

      -against-                    <u>MEMORANDUM & ORDER</u>
                                    17-CR-0053(JS)(ARL)
LORRAINE PIILITZ aka LORRAINE
CHRISTIE aka LORRAINE STORMS,

               Defendant.
--------------------------------X
APPEARANCES
For Government:      Adam Toporovsky, Esq.
                    United States Attorney's Office
                    271-A Cadman Plaza East
                    Brooklyn, New York  11201

                    Burton T. Ryan, Jr., Esq.
                    United States Attorney's Office
                    610 Federal Plaza
                    Central Islip, New York  11722

For Defendant:      Alexander R. Klein, Esq.
                    Bruce A. Barkett, Esq.
                    Matthew B. Keller, Esq.
                    Barket Epstein Kearon Aldea & LoTurco, LLP
                    666 Old country Road, Suite 700
                    Garden City, New York  11530

SEYBERT, District Judge:

        Currently before the Court is the motion <u>in limine</u> filed by the Government on September 30, 2022.  (Mot., ECF No. 103.)  In this motion, the Government seeks: (1) to admit civil deposition testimony given by Defendant Lorraine Pilitz (the "Defendant") in 2008, 2013, and 2015; (2) to admit evidence of Defendant's other business-related filings, contracts, and purchases, including the purchase of several tow trucks, the purchase of a property that the Defendant used for her businesses, and Defendant's bidding on

a New York State towing contract; (3) to call an IRS Revenue Agent as a summary lay witness and allow the Agent to remain in the courtroom during the testimony of the other Government witnesses; (4) to admit evidence of Defendant's prior tax filing history; and (5) to admit evidence related to Defendant's cash and banking related practices.  (See generally Id.)

The Government also seeks to preclude Defendant from introducing: (6) collateral consequences of any possible conviction; (7) exculpatory out-of-court statements made by Defendant; (8) lay opinion testimony that Defendant acted in good faith; (9) suggestions that the present case could have been handled administratively instead of criminally; and (10) the fact that certain currency transaction reports ("CTRs") associated with this case were not filed by the relevant banks.[1]  (Id.)

In response, the Defendant has filed an opposition to the Government's Motion in Limine.  (See Opp'n, ECF No. 108.)

Having reviewed the parties' submissions and relevant case law, the Court issues the following rulings.

---

[1] Going forward, the Court will refer to each of the Government's requests by the respective number assigned above.

<u>DISCUSSION</u>

I.    <u>The Defendant's Deposition Testimony is Admissible Under Rule</u>
      <u>801(d)(2)(A).</u>

In its first request, the Government seeks to admit Defendant's civil deposition testimony from 2008, 2013, and 2015. The Government argues this testimony is required to prove that "the defendant did not believe that the relevant tax returns were true and correct as to the material matters charged in the indictment." (Mot. at 6.) As such, the Government contends the testimony is relevant to proving both: (1) Defendant's lack of mistake; and (2) the tax returns were "not prepared without the Defendant's knowledge." (<u>Id.</u>) Further, the Government argues that the statements are admissible as opposing party statements under Federal Rule of Evidence ("Rule") 801(d)(2)(A). (<u>Id.</u>)

In opposition, Defendant contends the testimony should be precluded in part because: (1) the 2008 testimony was taken at least six to ten years before the period relevant to the Tax Counts[2] since the tax returns at issue were filed by Defendant in 2015 and 2019; and (2) none of the deposition testimony has a link to the Structuring Count.[3] (Opp'n at 5, 7.) If the testimony is relevant, Defendant argues the rule of completeness permits her to

---

[2] References to the "Tax Counts" are to Counts Three through Five.
[3] References to the "Structuring Count" are to Count One.

3

submit statements to be read in conjunction with the deposition testimony that the Government introduces.  (Id. at 6-7.)

In a criminal case, "the 'prosecution may use evidence obtained in a civil proceeding in a subsequent criminal action unless the defendant shows that to do so would violate his constitutional rights or depart from the proper administration of criminal justice.'"  United States v. Leonard, No. 02-CR-0881, 2008 WL 1943548, at *1 (E.D.N.Y. May 1, 2008) (citing United States v. Unruh, 855 F.2d 1363, 1374 (9th Cir. 1987)).  Where a party in a civil case opts to offer incriminating testimony instead of asserting her Fifth Amendment rights, "the Government [can] use any such testimony that it learned of against [that party] in a later criminal case."  United States v. Maxwell, 545 F. Supp. 3d 72, 79 (S.D.N.Y. 2021).

Although a declarant's out-of-court statements are generally considered hearsay, Rule 801(d)(2)(A) of the Federal Rules of Evidence excepts opposing party statements from the hearsay rule when "[t]he statement is offered against [the] opposing party and [the statement] was made by the party in an individual or representative capacity."  FED. R. EVID 801(d)(2)(A).

Here, Defendant's civil deposition testimony from 2008, 2013 and 2015, which is not hearsay and is relevant to establishing Defendant's knowledge and control of the books and financial records of the companies at issue.  Further, the Government has

4

proffered that the Defendant's statements will corroborate testimony from other witnesses at trial. As such, the Government's motion is GRANTED as to Request No. 1.

In light of this ruling, the Court agrees with Defendant that the rule of completeness may allow her to introduce statements that, in fairness, should be read in conjunction with the deposition testimony the Government will introduce. See FED. R. EVID. 106. To the extent Defendant seeks to introduce any such statements, the Court will consider their admissibility at trial.

## II. The Defendant's Other Business-Related Purchases are Admissible as Direct Evidence and Alternatively Under Rule 404(b).

In its second request, the Government seeks to admit Defendant's "other business-related filings and contracts" because such evidence is: (1) relevant to the Structuring Count; and (2) probative of the fact that structured funds were used by Defendant to make business-related purchases. (Mot. at 7.) Defendant counters, asserting that her purchases of real estate and vehicles, and her successful bid on a government contract, are not relevant to any elements of the Structuring Count and are highly prejudicial. (Opp'n at 8.)

Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character." FED. R. EVID. 404(b)(1). However,

other act evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2).   The Second Circuit "follow[s] the 'inclusionary approach' to the admission of prior-act evidence" and under that approach, "'evidence of prior crimes, wrongs, or acts is admissible for <u>any</u> purpose other than to show a defendant's criminal propensity.'" <u>United States v. Lasanta</u>, 978 F.2d 1300, 1307 (2d Cir. 1992) (citing <u>United States v. Brennan</u>, 798 F.2d 581, 589 (2d Cir. 1986)).   Notwithstanding, "other acts" that are admissible under Rule 404(b) may be inadmissible on relevancy grounds or pursuant to Rule 403.   <u>See</u> <u>United States v. Shellef</u>, 507 F.3d 82, 101 (2d Cir. 2007).

Here, the Court finds that Defendant's other business-related purchases are admissible as direct evidence and alternatively, as Rule 404(b) evidence.   The Court agrees with the Government that evidence which shows Defendant utilized allegedly structured funds for business-related purchases is relevant to show that she was responsible for structuring the funds in the first instance.   This is highly relevant to the Structuring Count, and particularly, the first element that the Government must prove beyond a reasonable doubt: that Defendant engaged in acts of structuring.   <u>See</u> <u>United States v. MacPherson</u>, 424 F.3d 183, 189 (2d Cir. 2005).   In addition, if Defendant was using funds in the

6

structured accounts for business-related purchases, this evidence may show a connection between the structured funds and Defendant's businesses.  The same holds true if Defendant was using funds in the structured accounts to bid on New York State towing contracts.  As such, Defendant's argument that this evidence should be excluded under Rule 403 is unpersuasive.  Thus, the Government's motion as to the second request is GRANTED.

Defendant also appears to argue that the Government should not be allowed to suggest the funds for these expenditures came from illegitimate sources because doing so would "inappropriately shift[] the burden of proof by placing the onus on [Defendant] to explain the source of the funds." (Opp'n at 9-10.)  The Court disagrees and notes that the source(s) of these funds is key to the Government's case, especially where, as here, Defendant is alleged to have diverted and concealed funds from her businesses which she then used to make other business-related purchases.  Further, in its usual manner, the Court will instruct the jury concerning the Government's burden of proof in a criminal case, and that the burden never shifts to the Defendant.

III. <u>IRS Agent Berzansky May Testify as a Lay Witness and Remain Present in the Courtroom During Trial</u>

In its third request, the Government seeks leave for IRS Agent Berzansky to testify as a summary witness to "summarize bank and financial records, summarize tax returns and information,

compute unreported receipts and income, and compute unreported tax due and owing." (Mot. at 7.) To formulate his testimony, Mr. Berzansky "will use a hybrid indirect method of determining gross receipts," a methodology which the Government represents is accepted in criminal tax trials. (Id.) Additionally, in the interests of efficiency and to properly compute the tax loss in this case, the Government requests that Agent Berzansky "be allowed to be present in the courtroom during the testimony of the other government witnesses." (Id. at 8.)

Defendant contends Mr. Berzansky is an expert rather than a summary witness. (Opp'n at 10.) Defendant notes prior instances where IRS agents who proffered similar testimony did so as experts because computing taxes due and owing, and unreported receipts and income, require specialized knowledge beyond the knowledge of a lay witness. (Id. at 10-11.) Further, Defendant urges the Court to sequester Mr. Berzansky pursuant to Rule 615 because the Government has failed to specify which testimony is essential for him to hear, and that he can review documents outside the Courtroom as easily as he can inside the Courtroom. (Id. at 12.)

"The Second Circuit has not directly addressed the issue [of] whether an IRS agent may testify as a summary witness in a tax evasion case. However, many other circuit courts have addressed the issue and they have concluded that an IRS agent may

do so." United States v. Ray, No. 22-CR-0110, 2022 WL 558146 at
*16 (S.D.N.Y. Feb. 24, 2022).   Indeed, "[s]o long as [the IRS
Agent] 'does no more than analyze facts already introduced into
evidence and spell out the tax consequences that necessarily flow
from those facts,' then [he] will merely be 'testifying as to [his]
analysis of the transaction which may necessarily stem from the
testimony of other witnesses.'"   United States v. Barnwell, No.
15-CR-0620, 2017 WL 1063457 at *2 (S.D.N.Y. Mar. 20, 2017) (citing
United States v. Stierhoff, 549 F.3d 19, 27-28 (1st Cir. 2008);
United States v. Moore, 997 F.2d 55, 58 (5th Cir. 1993)).

        Turning to sequestering a summary witness under Rule
615, "[a]t a party's request, the court must order witnesses
excluded so they cannot hear other witnesses' testimony." FED. R.
EVID. 615.   However, "this rule does not authorize excluding a
person whose presence a party shows to be essential to presenting
the party's claim or defense." FED. R. EVID. 615(c).   Further, it
has been recognized that:

> [b]ased on the purpose and function of a
> summary   witness . . . it   [is] . . . more
> efficient to allow [a summary witness] to
> follow the evidence as it is presented to
> ensure she only comments on evidence properly
> admitted at trial, and to ensure the accuracy
> of her testimony should cross-examination
> bring out any facts not considered by the
> Government's other witnesses.

Barnwell, 2017 WL 1063457, at *3 (citing United States v. Mohney,
949 F.2d 1397, 1404-05 (6th Cir. 1991)) (internal quotations

omitted); see also Ray, 2022 WL 558146 at *17 ("The Government has satisfied Federal Rule of Evidence 615's sequestration exception for a witness 'whose presence a party shows to be essential to presenting the party's claim or defense.'   [The IRS Agent's] summary testimony must be based on the evidence.  Her presence therefore is essential." (internal citations omitted)).

        Here, in the interest of efficiency, to ensure that Agent Berzansky solely relies upon the evidence presented at trial, and given the weight of authority in the Government's favor, this request is GRANTED.   Agent Berzansky may testify as a summary witness and may be present in the Courtroom during the testimony of the other Government witnesses.

IV.  Defendant's Tax Filing History is Admissible Under Rule 404(b)

        In its fourth request, the Government seeks to admit evidence that shows, "throughout the relevant period, the defendant failed to file tax returns repeatedly."  (Mot. at 9.) This evidence is offered to show: (1) as part of Defendant's alleged obstruction, she failed to file annual corporate income tax returns; and (2) Defendant's failure to file certain corporate returns and not others shows that her failure to file was "a voluntary, intentional violation of a known legal duty."  (Id.) Moreover, the Government argues that Defendant's tax filing history is relevant to her general knowledge of the tax laws, her

duty to pay taxes, and that her failure to pay taxes was neither accidental nor innocent error.  (Id.)

Defendant counters that her tax filing history from previous years is not relevant to the Tax Counts because the "willfulness element of the Tax Counts relates to the Defendant's state of mind as to a particular statement or statements made on a particular return."  (Opp'n at 14.)  Defendant elaborates that, "[b]ecause every tax return is based on information from a different year[,] . . . a defendant's tax returns from other years, or the fact that no return was filed, is not probative as to whether or not the defendant knew that a particular return contained false entries at the time that return was signed."  (Id.) Regarding the Obstruction Count,[4] Defendant argues that her prior tax filing history is only relevant "for those years in which a 'particular administrative proceeding' was pending."  (Id. at 16.) Consequently, Defendant asks the Court to preclude evidence of tax filings prior to May 2014, the date of "a reasonably foreseeable administrative proceeding."  (Id.)

The Supreme Court has construed willfulness in criminal tax cases to require the Government "to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty."  Cheek

---

[4] The "Obstruction Count" refers to Count Two.

v. United States, 498 U.S. 192, 201 (1991). "Willfulness may be established by circumstantial evidence," such as a defendant's past taxpaying record. United States v. Gilmartin, 684 F. App'x 8, 11 (2d Cir. Mar. 22, 2017); United States v. Bok, 156 F.3d 157, 165 (2d Cir. 1998); see also United States v. Magnus, 365 F.2d 1007, 1011 (2d Cir. 1966) ("[P]rior taxpaying history, both federal and state, was probative of [taxpayer's] willfulness in failing to pay substantial amounts of federal taxes in [the years at issue]." (citing United States v. Klein, 340 F.2d 547 (2d Cir. 1965))).

Although Defendant argues that 26 U.S.C. § 7206 and other tax statutes should preclude the Government from introducing her tax filing history as a means of proving willfulness, the Court disagrees. Indeed, Defendant acknowledges courts that have admitted a defendant's prior tax history in Section 7206 cases to prove willfulness. (See Opp'n at 14-15.) However, Defendant attempts to distinguish those cases, arguing they involved various combinations of tax-related charges, unlike the instant case, which involves only false statements. See, e.g., Bok, 156 F.3d at 157 (holding that tax history was relevant at trial of defendant charged with both tax evasion and false statements on tax returns). The Court finds this to be a distinction without a difference, and declines to preclude Defendant's prior tax history on that basis. See United States v. Musto, No. 16-CR-0090, 2019 WL 2295371, at

*7-12 (M.D. Penn. May 28, 2019) (admitting prior tax history to prove willfulness for charges under Sections 7206 and 7212(a)).

Turning to Rule 404(b), the Court is satisfied that the Government is offering this evidence for a permissible reason. The failure to file corporate tax returns for certain years and certain companies has the tendency of showing that Defendant was engaged in a pattern of conduct of intentionally underreporting her income over the period covered by her tax returns that the Government seeks to introduce. Moreover, such prior filing history can also demonstrate both absence of mistake and lack of accident, such that Defendant's failure to file for certain years was the product of an intentional violation of a known legal duty.

Additionally, the Court finds this evidence to be relevant to the Obstruction Count; however, based upon the Government's submissions, it is unclear from what time period the Government intends to introduce returns to prove this Count. Although the Government intends to introduce evidence "showing [that] the defendant was aware of tax proceedings much earlier than 2014," it fails to articulate how much earlier. Consequently, the Government's request is GRANTED IN PART, to the extent that Defendant's tax filing history is admissible from years in which the Government can demonstrate that Defendant was reasonably aware of a pending administrative proceeding.

V.   Defendant's Cash- and Banking-Related Practices are
     Admissible Under Rule 404(b)

In its fifth request, pursuant to Rule 404(b) the
Government seeks to introduce evidence of Defendant's cash and
banking related practices.  Specifically, the Government seeks to
admit evidence that Defendant: paid employees in cash; solicited
cash payments from clients; told employees certain tax
withholdings would be made in their names but did not make the
withholdings; and offered to finance a portion of a property sale
"in cash and 'off the books.'"  (Mot. at 9.)  The Government also
argues that these practices are direct evidence of the Structuring
Charge and should also be considered relevant to the Tax Counts
because they show motive, intent, and knowledge.  (Id. at 9-10.)

Defendant contends that her cash and banking practices
are irrelevant to the Structuring and Tax Counts.  (Opp'n at 16-
17.)  As to the Structuring Counts in particular, Defendant
contends that the Government intends to prove this Count using
business checks alone.  (Id. at 17.)  Further, she argues the
Government has failed to show "any connection whatsoever between
the . . . cash deposits and [Defendant's] businesses," which
should "preclude[] [the Government] from offering proof of cash
deposits in support of the Tax Counts."  (Id.)

"In tax fraud cases[,] evidence tending to show
misconduct through extensive dealings in cash is properly admitted

14

into evidence." <u>United States v. Sun Myung-Moon</u>, 718 F.2d 1210, 1228 (2d Cir. 1983). Similarly, in cases involving income tax evasion, "evidence purporting to show the willfulness of misconduct through extensive dealings in cash is properly admissible." <u>United States v. White</u>, 417 F.2d 89, 92 (2d Cir. 1969) (noting that the Government's proof "showed that a large number of checks were cashed by the [defendants] throughout the period covered by the indictment instead of being deposited to the proper business accounts," and that, "[c]ash deposits in the separate bank account . . . had a substantial tendency to prove [defendants'] intent in converting unreported income received in check form into cash").

Here, the Government is required to show that Defendant "willfully ma[de] and subscribe[d]" a return which she did not "believe to be true and correct as to every material matter." 26 U.S.C. § 7206. Evidence that the Defendant solicited cash payments and attempted to deal heavily in cash is relevant to the Tax Counts because it has the tendency to show that Defendant was possibly underreporting her earned income by keeping transactions "off the books." Moreover, this evidence may tend to show that when signing the tax returns at issue, if Defendant's cash dealings were not accounted for on the tax returns, Defendant would have known that there were material misstatements present when she signed them. Evidence that shows a defendant's plan, knowledge, or intent

regarding allegedly underreported income is certainly admissible under Rule 404(b).

Similarly, if Defendant was transacting heavily in cash, and, as the Government alleges, structuring that cash into various accounts before utilizing the money to make business-related purchases, this would be admissible evidence that Defendant was the person orchestrating the alleged structuring. Regardless of the manner the Government intends to prove the Structuring Count, i.e., through checks, it should be permitted to show connections between Defendant's businesses, her cash-related practices, and the alleged structured funds. Accordingly, the Government's motion is GRANTED as to Request No. 5.

VI.  Defendant is Precluded from Introducing Evidence of Collateral Consequences from Possible Conviction

In its sixth request, the Government argues that Defendant should be precluded from "referencing at trial any consequences of her conviction, including the potential prison sentence [that] she faces if convicted." (Mot. at 10.) This request is GRANTED.

Where a jury is empaneled only to decide a defendant's guilt beyond a reasonable doubt, as it is here, the jury has no sentencing function. The jury's function is to find the facts and decide whether, on those facts, the defendant is guilty of the crime charged; thereafter, the Court will impose a sentence if the

jury arrives at a guilty verdict.  As such, "information regarding the consequences of a verdict is irrelevant to the jury's task, [and] providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion."  United States v. Inniss, No. 18-CR-134, 2019 WL 6999912, at *9 (E.D.N.Y. Dec. 20, 2019) (quoting Shannon v. United States, 512 U.S. 573, 579 (1994)).

VII.  The Court Reserves Decision on the Admissibility of Defendant's Exculpatory Out-of-Court statements

In its seventh request, upon which the Court is RESERVING DECISION, the Government seeks to preclude Defendant from introducing "out-of-court" exculpatory statements "to explain her conduct or beliefs."  (Mot. at 11.)  Although Defendant may not introduce her out-of-court statements to "avoid[] cross-examination to test the credibility of [her] assertions," (Id. at 11), pursuant to Rule 106, such statements may be admissible to explain any purported admissions offered by the Government, to place those statements in context, to avoid misleading the jury, or to ensure a fair and impartial understanding of the statements admitted by the Government.  The Court will be better positioned to accurately determine whether or not such statements are admissible under Rule 106 at trial.

VIII.  Defendant May Admit Evidence of her Good Faith Reliance on the Advice of Accounting Professionals

The Government's eighth request seeks to preclude Defendant from introducing lay opinion testimony as to her "good faith beliefs" regarding the tax returns at issue.  (Mot. at 11-12.)  While lay opinion testimony is admissible under Rule 701 where it is "rationally based on the witness' perception" and "helpful to . . . determining a fact in issue," the Government anticipates "no factual support, based on first-hand knowledge or observations, for a lay opinion that the defendant" acted in good faith.  (Id. at 12.)  Defendant counters that she is entitled to assert "that she relied in good faith [upon] the professional advice" of the accountants that prepared all of Defendants' "individual and corporate tax returns."  (Opp'n at 19-20.)

In tax fraud cases, courts within this circuit have recognized a defendant may offer evidence that she relied upon the advice of an accountant as a good faith defense.  See United States v. Libous, 645 F. App'x 78, 82 (2d Cir. Apr. 11, 2016) (citing United States v. Blanchard, 618 F.3d 562, 576 (6th Cir. 2010)); see also United States v. Evangelista, 122 F.3d 112, 117 (2d Cir. 1997).  This defense is available so long as the "defendant 'fully and honestly lays all the facts before' the accountant."  Libous, 645 F. App'x at 82 (quoting Evangelista, 122 F.3d at 117).  As such, to the extent the Government seeks wholesale preclusion of

Defendant introducing evidence of a good faith defense, that request is DENIED. It will be for the jury to decide the credibility of any such defense.

IX. <u>Defendant is Precluded from Suggesting the Present Case Could Have Been Handled Civilly</u>

In its ninth request, the Government seeks to preclude the defense from suggesting that this case "should have been handled through administrative or civil proceedings instead of through criminal prosecution." (Mot. at 12.) "[T]he availability of a civil remedy is irrelevant to the issue of criminal liability." <u>See e.g.,</u> <u>United States v. Buras</u>, 633 F.2d 1356, 1360 (9th Cir. 1980) (citing <u>United States v. Merrick</u>, 464 F.2d 1087, 1093 (10th Cir. 1972)). Therefore, the Government's ninth request is GRANTED.

X. <u>Evidence that Certain CTRs Were Not Filed is Inadmissible</u>

In its final request, the Government asks the Court to exclude evidence related to financial institutions' filing, or failing to file, CTRs. The Government argues that "[t]he bank's reasons for filing the[] CTRs [are] irrelevant to the [D]efendant's intent to evade reporting requirements." (Mot. at 13.) Further, the CTRs "do[] not tend to make any disputed fact more or less probable [because] the fact that the [D]efendant was unsuccessful at structuring one deposit does not in any way negate the

[D]efendant's specific intent to evade the reporting requirements."  (Id.)

In response, Defendant contends this is an open issue within the Second Circuit and such evidence should be admissible. (Opp'n at 21.)  Further, since "there is rarely direct evidence of a defendant's state of mind," Defendant intends to introduce "the widest possible range of probative circumstantial evidence," including the consequences of Defendant's actions.  (Id.)

In United States v. Van Allen, the Seventh Circuit reviewed a district court's decision to "exclude[] on relevance grounds the fact that [a financial institution] filed CTRs."  524 F.3d 814, 824 (7th Cir. 2008).  The Van Allen defendant argued that "the CTRs were relevant to the jury's consideration of both his knowledge of the bank reporting requirements and his intent to avoid those requirements."  Id. at 825.  Further, he argued that multiple cases supported the proposition "that a jury may consider the consequences of a defendant's actions as circumstantial evidence of the defendant's intent."  Id.  The Seventh Circuit affirmed the district court's exclusion of the evidence because it "fail[ed] to see the logical connection between the fact of [the bank's] filing of CTRs and [the defendant's] guilt or innocence":

> The actions of [the bank] following
> [defendant's] various deposits and
> withdrawals [did] not demonstrate anything
> material about [the defendant's] state of
> mind.  At most, the filing of CTRs may have

> indicated something about the knowledge of officials at [the bank]; but such knowledge would not make it more or less likely that [the defendant] knew of the reporting requirements or acted to avoid them. Whether or not [the defendant] actually fooled [the bank] has no bearing on the substantive violation under 31 U.S.C. § 5324(a)."

Id.

The Court is persuaded by the reasoning of the Seventh Circuit in Van Allen. Here too, the Court fails to see how the general filing or lack of filing of a CTR, without more, has any logical connection to either Defendant's knowledge of the CTR reporting requirements, or her guilt or innocence as to whether she willfully acted to avoid them. Indeed, Defendant could have had knowledge of the CTR reporting requirements even if the bank officials did not. Evidence that a financial institution failed to file a CTR when it should have has no relevance to Defendant's knowledge or state of mind at the time of the underlying transaction. Similarly, Defendant's intent to evade the CTR reporting requirements is not made more or less likely by the fact that a bank failed to file a CTR when it was required to do so.

However, the filing of a CTR may be admissible to prove Defendant's knowledge or intent if she is able to demonstrate that she was informed a CTR would be filed, and nevertheless continued with the transaction. Absent such showing, the Government's final request is GRANTED.

## CONCLUSION

For the stated reasons, **IT IS HEREBY ORDERED** that the Government's motion <u>in limine</u> (ECF No. 103) is GRANTED IN PART and DENIED IN PART.

A. The Government's first request is **GRANTED**. Defendant's civil deposition transcripts are admissible under Rule 801(d)(2)(A); however, the Court will determine at trial whether Defendant may introduce statements to be read together with the deposition testimony pursuant to Rule 106;

B. The Government's second request is **GRANTED**. Defendant's other business-related purchases are admissible;

C. The Government's third request is **GRANTED**. Agent Berzansky may testify as a summary witness and may be present in the Courtroom while the Government's other witnesses testify;

D. The Government's fourth request is **GRANTED IN PART** to the extent that Defendant's tax filing history is admissible from years in which the Government can demonstrate that Defendant was reasonably aware of a pending administrative proceeding;

E. The Government's fifth request is **GRANTED**. Evidence of Defendant's cash- and banking-related practices are admissible;

F. The Government's sixth request is **GRANTED**. Defendant is precluded from referencing collateral consequences;

G. The Court **RESERVES DECISION** on the Government's seventh request;

H. The Government's eighth request is **DENIED.** Defendant may present evidence that she relied in "good faith" upon the advice of her accountants;

I. The Government's ninth request is **GRANTED.** Defendant is precluded from referencing at trial that the present case could have been handled administratively or civilly;

J. The Government's tenth request is **GRANTED IN PART.** Defendant may not admit evidence that certain CTRs were not filed in this case unless she can demonstrate that she was informed a CTR would be filed and nevertheless proceeded with the underlying transaction.


**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  October 25, 2022
        Central Islip, New York