```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------
 UNITED STATES OF AMERICA,

 -against-                             ORDER
                                       No. 17-CR-0053 (JS)
 LORRAINE PILITZ,

         Defendant.

---------------------------------
APPEARANCES

For Defendant:        Lorraine Pilitz, Pro Se
                      89959-053
                      c/o RRM New York¹
                      Residential Reentry Office
                      201 Varick Street, Room 849
                      New York, New York  10014

For United States:    Adam R. Toporovsky, Esq.
                      United States Attorney's Office
                      Eastern District of New York
                      610 Federal Plaza
                      Central Islip, New York  11722


SEYBERT, District Judge:
```

---

¹ It is Defendant's duty to keep the Court apprised of her current address; she has been informed of that duty, but has failed to do so. (See, e.g., Returned Mail, ECF No. 213 (returning the Court's July 23, 2025 electronic ORDER mailed to Defendant's address of record, i.e., the Federal Correctional Institution located in Danbury, Connecticut, in which ORDER the Court advised Defendant of her duty to maintain a current address).) However, the Court notes that the same July 23 ORDER was mailed to Defendant c/o the RRM New York Residential Reentry Office located at 201 Varick Street in New York City and said mailing was not returned to the Court. (See Case Docket, in toto.) Therefore, this Order is to be mailed to Defendant c/o of the RRM New York Residential Reentry Office at that address.

Currently before the Court is the pro se motion of Defendant Lorraine Pilitz ("Defendant") seeking a sentence reduction and compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (hereafter, the "Motion"). (See ECF No. 205; see also Reply, ECF No. 211). The Government opposes the Motion. (See Opp'n, ECF No. 208). For the following reasons, the Motion is **DENIED**.

<u>RELEVANT BACKGROUND</u>

The Court presumes the reader's familiarity with the relevant background of this case; nonetheless, for convenience it summarizes the pertinent facts. On August 4, 2021, in a five-count third superseding indictment, Defendant was charged with: (1) structuring financial transactions, in violation of Title 31, United States Code, Sections 5324(a)(3) and 5324(d)(2); (2) corruptly endeavoring to obstruct and impede the Internal Revenue Laws, in violation of Title 26, United States Code, Section 7212(a); and (3) filing false tax returns, in violation of Title 26, United States Code, Section 7206(1). (See ECF No. 91 ("Third Superseding Indictment").) The charges emanated from Defendant having operated her auto towing, repair, and insurance businesses, from approximately 2010 to 2019, in a manner designed to conceal their income from New York State, the Federal government, and from civil lawsuits, all during which time Defendant was on personal notice from the Internal Revenue Service ("IRS") that Defendant

owed taxes. Defendant was convicted at trial on all counts. (See, e.g., Jury Verdict, ECF No. 136.)

At her sentencing, Defendant did not take responsibility for her actions, instead asserting:

> I never deposited $1 million in any bank accounts. I never had $1 million in my business or personal. My business is a small collision business where I work with insurance companies. I do not have a cash business . . . . I've always paid my taxes and [filed] my returns . . . . I put in my expenses as nobody did. I went according to their figures and accepted that. In the present matter, this is between the IRS and I [sic]. There are no other people.

(Jan. 19, 2024 Sent'g Tr., Ex. B, at 31:21-33:24, attached to Opp'n.) This Court sentenced Defendant to 33 months' incarceration, which was the low end of the applicable Guidelines range. (See Statement of Reasons, ECF No. 195 (sealed), § III.) In doing so, among other things, the Court considered Defendant's claimed caregiving role for her mother. (See, e.g., Def. Sent'g Memo, ECF No. 190, at 11-13; Sent'g Tr. 26:21-27:2, 30:20-24, 31:17-18, 33:6-8.) Nonetheless, in imposing its sentence, the Court stated, inter alia:

> While rarely do I think white color crimes necessarily require a sentence of incarceration, your cases is the exception. You have deliberately and with absolute knowledge of what you were doing[--]whether you have dyslexia or not, whether you love your mother and your son or not[--]you have committed serious crimes. And the length of time that it's taken you to even give a minimal

>   apology is indicative to me of what you will
>   do in the future.

(Sent'g Tr. at 35:7-15.)  The Court also observed: "I should point out that your mother has other family members that will have to come up and take care of her during the period of incarceration." (Id. at 36:25-37:2.)  In conjunction therewith, Defendant was afforded three months to surrender thereby providing her time to arrange for the care for her mother.  (See id. at 39:20-24; see also Judgment, ECF No. 194, at 3.)  Defendant was further sentenced to two year's supervised release.  (See Judgment at 4.)

The Court recommended Defendant be housed at FCI Danbury.  (See id. at 3.)  She began her sentence there, but is currently under the auspices of the New York RRM Residential Reenty Office.[2]  See Fed. Bureau of Prisons ("BOP"): Find an Inmate, Lorraine Pilitz (BOP Reg. No. 89959-053), https://www.bop.gov/inmateloc/ (last visited Aug. 11, 2025) (identifying Defendant's location as "New York RRM").  Defendant is currently 67 years old and has an anticipated release date of February 8, 2026.

On February 7, 2025, Defendant moved for a sentence reduction; her sole basis for seeking said reduction is Defendant's

---

[2]  Because she has failed to update her address of record, the Court is unable to ascertain whether Defendant is on home confinement or housed in a residential reentry center or under some other BOP housing arrangement.

claim that she needs to care for her mother. (See Motion at 2.) On April 21, 2025, the Government filed its Opposition. Defendant replied on May 20, 2025. Defendant's Motion is ripe for decision.

## DISCUSSION

I. Applicable Law

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)); see also United States v. Santana, No. 15-CR-0457, 2025 WL 1940370, at *2 (E.D.N.Y. July 15, 2025) (same). The First Step Act ("FSA"), which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); see also United States v. Thrower, 495 F. Supp. 3d 132, 137 (E.D.N.Y. 2020). "The statute imposes three independent, necessary requirements for release: exhaustion of remedies, existence of an extraordinary and compelling reason for sentence reduction, and that the § 3553(a)

[F]actors warrant reduction." United States v. Hunter, No. 21-1773, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (citing United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam)); see also United States v. Rodriguez, No. 24-1539, -- F.4th --, 2025 WL 2301077, at *4 (2d Cir. Aug. 11, 2025) (same). "A defendant's failure to exhaust administrative remedies is a threshold matter preventing the [c]ourt from considering a Section 3582 application." United States v. Robinson, No. 10-CR-0789, 2022 WL 16924176, at *3 (E.D.N.Y. Nov. 14, 2022) (quoting United States v. Alvarez, No. 89-CR-0229, 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020)). And, "[i]f any one requirement is not satisfied, the district court may deny the motion without considering the remaining requirements." Hunter, 2022 WL 2288688, at *1 (citing Keitt, 21 F.4th at 72-73); see also, e.g., United States v. Pimentel, No. 23-7096-CR, 2025 WL 783730, *2 (2d Cir. Mar. 12, 2025) (summary order) (affirming district court's denial of compassionate release where lower court's denial was based solely on applying Section 3553(a) Factors, which it found did not warrant consideration of proffered extraordinary and compelling reasons; quoting Keitt).

Where exhaustion is satisfied, in their consideration of motions brought pursuant to the FSA, courts are to consider whether a sentence "reduction is consistent with applicable policy statements issued by the Sentencing Commission", 18 U.S.C.

§ 3582(c)(1)(A); see also Guidelines § 1B1.13 (the "Policy Statement"), and whether the relevant Section 3553(a) Factors favor such a reduction. See United States v. Donato, No. 95-CR-0223, 2024 WL 1513646, *5 (E.D.N.Y. Apr. 18, 2024);[3] see

---

[3] In Donato, Judge Azrack of this District explained:

> In 2020, the Second Circuit determined that the applicable policy statement—U.S.S.G. § 1B1.13—does not apply to motions for compassionate release filed by defendants because the statement's language referenced only motions filed by the Director of the Bureau of Prisons. See United States v. Brooker, 976 F.3d 228, 235–37 (2d Cir. 2020). [T]he Sentencing Commission has since amended the policy statement, such that it now explicitly covers motions for compassionate release brought by individual defendants. See U.S.S.G. § 1B1.13(a) ("Upon motion of the Director of the Bureau of Prisons or the defendant, . . . the court may reduce a term of imprisonment . . . .") (emphasis added). As a result, courts in this circuit have determined that "Brooker does not apply to the new version of Policy Statement 1B1.13 . . . . [and that] to grant a motion for compassionate release, a court must now . . . find that granting such relief is consistent with Policy Statement 1B1.13." United States v. Feliz, [No. 16-CR-0809,] 2023 WL 8275897, at *4 (S.D.N.Y. Nov. 30, 2023) (quotation marks omitted); see also United States v. Andrews, [No. 01-CR-0450,] 2023 WL 8477993, at **2–5 (S.D.N.Y. Dec. 7, 2023) (analyzing the recent amendments to Policy Statement 1B1.13 and applying it to a defendant's motion for compassionate release). Accordingly, the amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated. See generally U.S. Sent'g Comm'n,

also Keitt, 21 F.4th at 71. However, "'[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" United States v. Brooker, 976 F.3d 228, 235-37 (2d Cir. 2020) (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t)); see also U.S.S.G. § 1B1.13(d).

Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) [F]actors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) [F]actors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation omitted); see also Pimentel, 2025 WL 783730, at *2; United States v. Jones, No. 22-2008-CR, 2023 WL 8613867, at *2 (2d Cir. Dec. 13, 2023) (same). "The defendant bears the burden of showing that the circumstances warrant a sentence reduction." United States v. Sellick, No. 21-2328, 2022

---

Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023); see also United States v. Lopez, [No. 16-CR-0317,] 2024 WL 964593, at *2 (S.D.N.Y. Mar. 5, 2024.)

Donato, 2024 WL 1513646, at n.10; see also Feliz, 2023 WL 8275897, at *1 (stating recent amendments, "which updated Section 1B1.13 of the U.S. Sentencing Guidelines Manual to harmonize the provision with the First Step Act of 2018, have changed the legal framework promulgated by the Second Circuit in United States v. Brooker, 976 F.3d 228 (2020)").

WL 16936829, at *1 (2d Cir. Nov. 15, 2022) (summary order) (citing Jones, 17 F.4th 371, 375 (2d Cir. 2021)); see also United States v. Friedlander, No. 20-CR-0441, 2022 WL 2305370, at *3 (E.D.N.Y. June 24, 2022) ("A defendant 'bears the burden of showing that his release is justified.'" (quoting United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020)).

II. Application

    A. Exhaustion

Defendant asserts she requested compassionate release from the Warden of FCI Danbury, which the warden denied. (See Motion at 3 (citing Ex. 1, attached to Motion).)  Thus, Defendant maintains "the exhaustion requirement has been met." (Id.)  The Government does not challenge Defendant's exhaustion efforts. (See Opp'n, in toto.)  Thus, "because the Government did not raise an exhaustion defense, and 'directs its opposition entirely at the other two prerequisites for compassionate release,' the Court proceeds to consider the merits of Defendant's Motion." United States v. Henriquez, No. 04-CR-0939, 2024 WL 4450851, at *3 (E.D.N.Y. Oct. 9, 2024) (quoting United States v. Romano, 707 F. Supp. 3d 233, 237 (E.D.N.Y. 2023), and citing United States v. Saladino, 7 F.4th 120, 123 (2d Cir. 2021)); United States v. Vasquez, No. 96-CR-1044, 2024 WL 2385264, *3 (E.D.N.Y. May 23, 2024) ("[B]ecause the Government has not raised an exhaustion

defense, the Court finds that it has forfeited any such defense and the Court is 'free to consider the merits' of [defendant's compassionate release] motion" (quoting Saladino; collecting cases)); see also United States v. Lake, No. 14-CR-0264, 2023 WL 8810620, at *3 (E.D.N.Y. Dec. 20, 2023) (proceeding, where there was no dispute defendant had exhausted his administrative remedy, to "determine whether [d]efendant ha[d] met his burden of showing compassionate release [wa]s warranted"); United States v. Diaz, No. 10-CR-0277, 2024 WL 3228347, at *2 (E.D.N.Y. June 27, 2024) (finding, where Government "d[id] not expressly raise an exhaustion defense," but "direct[ed] its opposition entirely at whether [defendant] states extraordinary and compelling reasons and whether § 3553(a) factors militate against his early release," the court was free to consider the merits of defendant's compassionate release motion (omitting internal quotations marks and citations)).

    A.    <u>Extraordinary and Compelling Circumstances</u>

Defendant relies upon her family circumstances as an extraordinary and compelling circumstance warranting a sentence reduction. (See Motion at 4.) More specifically, Defendant focuses upon the sub-provision which highlights "the incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." (Id. (quoting U.S.S.G. § 1B1.13(b)(b)(C).) Defendant acknowledges she must

establish both that her parent--in this instance, Defendant's mother, Diana Christie (hereafter, "Mother")--is incapacitated and that she (Defendant) is Mother's sole caregiver. (See id.; see also Opp'n at 5 (asserting "[c]ourts considering compassionate release for the purposes of caregiving require evidence establishing the severity of the circumstances and showing that the defendant is the only person capable of taking care of the incapacitated relative" (citing United States v. Smith, 331 F.3d 292, 294 (2d Cir. 2003), and United States v. Madrigal, 331 F.3d 258, 260 (2d Cir. 2003)).)

Defendant contends Mother: is 98-years-old; has high blood pressure and high cholesterol; has had heart surgery; has had knee surgery, has difficulty walking with a walker, and is unable to climb stairs; suffers from vertigo and frequently falls; has failing memory; and, is on several medications. Because Mother lives alone, "no one can confirm that she takes her medications as required or whether she can even feed and bathe herself properly." (Motion at 5 (relying upon progress reports of Dr. Inna Livitz, MD, D.O., and review of medical records by Dr. Richard Goldberg, MD).) The Government does not challenge Mother's medical status. (See Opp'n at 5.) Instead, it focuses upon the second necessary showing, i.e., whether Defendant is Mother's sole caregiver. (See id. at 5-6.) The Court does likewise.

Defendant claims she is the only one available to fill the role of caregiver for Mother since her two sisters, Virginia and Debra—and, Mother's other daughters—are deceased. (See Motion at 6-7.) Moreover, as to Mother's grandsons, including Defendant's son, they live out-of-state, either in Florida or Arizona. (See id. at 7.) Defendant further maintains she is estranged from her husband and has been for 15 years. (See id.) In sum, "[t]here are no other family members, close or distant, who live in New York, where Diana resides . . . ." (Id.)

The Government counters: There is no indication why the grandchildren "cannot travel to New York, or, better yet, why [Mother] cannot move to Florida or Arizona to be cared for by them." (Opp'n at 5.) Nor does Defendant state that her son or estranged husband are unable to care for Mother. (See id.) Additionally, the Government proffers that, in February 2025, when IRS law enforcement personnel visited Mother's home, they observed several vehicles outside, including one registered to one of Mother's sons-in-law and another registered to one of Mother's grandchildren. (See id.) The son-in-law informed law enforcement: "he 'floats' between [Mother's] home and an apartment in Bellmore, New York"; "he checks on [Mother] and brings her groceries"; two of his friends also check on Mother; and, Defendant's boyfriend sometimes sleeps at Mother's house. (Id. at 5-6.) It also asserts Mother's granddaughter regularly visits her. (See id. at 6.)

Finally, the Government argues Defendant has not provided proof that Mother cannot afford a full-time caretaker and/or cannot afford to move into a retirement community, especially given Defendant's claim at sentencing that she received hundreds of thousands of dollars in cash from Mother. (See id.)  In any event, the Government maintains, "[c]ourts have routinely rejected compassionate release applications solely for the care of an elderly parent."  (Opp'n at 5 (collecting cases).)  That is so; given the record before it, this Court, too, rejects Defendant's Motion advanced upon the basis that Defendant is Mother's sole caregiver.

"Although [D]efendant's status as the 'only available caregiver' may constitute an extraordinary and compelling circumstance, see U.S.S.G. § 1B1.13(b)(3)(C), [Defendant] has not made such a showing, which could require h[er] to provide an explanation and 'several sources of evidence' that [s]he was the only persona available to care for her." United States v. Johnson, 754 F. Supp. 3d 305, 316 (E.D.N.Y. Oct. 17, 20240 (citing United States v. Sharma, No. 19-CR-0024, 2023 WL 4305054, at *3 (E.D.N.Y. June 30, 2023)); see also United States v. Lindsey, No. 13-CR-0271, 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) (finding, where defendant failed to meet "several sources" burden claiming he was the only available caregiver, family circumstances did not constitute extraordinary and compelling circumstances warranting

compassionate release); but cf. United States v. Lisi, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020) (finding evidence from "several sources" indicating defendant was his mother's only available caregiver to be an extraordinary and compelling reason for compassionate release).  Instead, Defendant offers little more than her "self-serving statements"; this falls well-short of her burden in establishing her claimed family circumstances situation. See United States v. Singh, No. 21-CR-0397, slip op. (ECF No. 204) (E.D.N.Y. Dec. 1, 2023), aff'd, No. 23-8038, 2025 WL 763390, at *1 (2d Cir. Mar. 11, 2025) (summary order).  Moreover, even in one such statement, Defendant concedes one of Mother's grandsons "mostly stays in Dix Hills, NY with his girlfriend" and "will stop in from time to time, bringing [Mother] groceries, within his ability to do so."  (Reply at ¶ 8.)  This admission undercuts Defendant's claim that she is the only available caregiver to Mother.  Compare, e.g., United States v. Messina, No. 11-CR-0031, 2024 WL 2853119, at *5 (E.D.N.Y. June 4, 2024) (finding defendant was not the only available caregiver, when "evidence show[ed] that, although it has been a challenge, a combination of family members ha[d] been able to coordinate to respond to [defendant's parent's] medical needs").  And, in combination with the absence of "ample evidence from several sources" that she is Mother's sole caregiver, see Lindsey, 2021 WL 37688, at *3, Defendant has not established an extraordinary and compelling reason for release.

C. Section 3553(a) Factors

"[A] district court may deny a motion for compassionate release in 'sole reliance' on the Section 3553(a) [F]actors, without determining 'whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.'" Jones, 2023 WL 8613867, at *2; see also Jones, 17 F.4th at 374 ("[A] district court's 'reasonable evaluation of the Section 3553(a) [F]actors' is 'an alternative and independent basis for denial of compassionate release.'" (quoting United States v. Robinson, 848 F. App'x 477, 478 (2d Cir. 2021)). Moreover, the Second Circuit has very recently reiterated: "[A] district court has broad discretion in weighing the § 3553(a) factors in the context of a motion for compassionate release, and [the appellate court] owe[s] that analysis considerable deference." Rodriguez, 2025 WL 2301077, at *4 (citing Keitt, 21 F.4th at 72, and United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008) (en banc)).

> The [Section 3553(a) F]actors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and "to provide the defendant with needed educational or vocational training, medical care, or other

> correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1)-(2).

United States v. Johnson, 671 F. Supp. 3d 265, 283 (E.D.N.Y. 2023).

In addressing the Section 3553(a) Factors, Defendant focuses predominantly upon her rehabilitative efforts. (See Motion at 8.) In opposition, the Government argues: "Although [Defendant]'s supposed commitment to rehabilitation during her short prison stay would be commendable, it is not a basis for a sentence reduction." (Opp'n at 8 (collecting cases).) The Court agrees.

Recently, in denying a compassionate release motion where the defendant showed "significant strides in his rehabilitation", this Court, nonetheless, found the defendant's "commendable rehabilitation [wa]s not enough". United States v. Latney, No. 18-CR-0606, 2025 WL 1126474, at *7 (E.D.N.Y. Apr. 16, 2025). In Latney, the defendant: presented evidence of maintaining familiar relationships; provided letters of support from a prison chaplain, an attorney, and fellow inmates; and, submitted a letter of contrition.[4] See id. at *7-8. While the Court found defendant Latney's rehabilitative efforts "laudable", because there was an absence of other extraordinary and compelling reasons, "the weight his rehabilitation efforts might have added to the Court's calculus

---

[4] Latney had a blemish-free disciplinary record while incarcerated. See Latney, 2025 WL 1126474, at *8 n.3.

of the totality of the circumstances [wa]s without effort". Id. at *8. Hence, the Court found no grounds to reduce defendant Latney's sentence. See id.

In comparison, Defendant's showing of rehabilitative efforts, e.g., being involved in recidivist reduction programming, tutoring other inmates in reading and math, and assembling hygiene kits for new inmates, while arguably commendable, pales when juxtaposed against Latney's efforts. For example, in the instant case, there has been no showing of: the maintenance of familial relationships; letters of support; or other clear signs that Defendant's incarceration has had extraordinary rehabilitative value; and, it is up for debate whether Defendant had a blemish-free disciplinary record. Moreover, in reaching its conclusion in Latney, and as is relevant here, the Court stated:

> As the Government persuasively argue[d in opposing the granting of compassionate release]:
>
> > [S]ince rehabilitation and "model prison conduct is expected" of federal inmates, the [D]efendant should not be granted compassionate release on this basis. United States v. Veliu, No. 17-CR-0404, 2022 WL 2484240, at *5 (E.D.N.Y. July 6, 2022); see also United States v. Reyes, No. 20-3285, 2022 WL 1669388, at *1 (2d Cir. May 26, 2022) (summary order) (affirming compassionate release denial where district court "acknowledged [the defendant's] efforts toward rehabilitation, [but] nevertheless found that the [S]ection 3553(a)

> [F]actors weighed heavily against a sentence reduction" based on the defendant's conduct); United States v. Garcia, No. 19-CR-210 (CS), 2022 WL 672758, at *2 (S.D.N.Y. Mar. 7, 2022) ("Maintaining good conduct in prison is not uncommon, and indeed is expected.").

The Court cannot disagree. Id. at *8 (omitting internal citation). The same holds true here; "rehabilitation is expected of a federal inmate." Id. at *3; see also, e.g., Alvarez, 2020 WL 4904586, at *7 ("[T]he Court finds that Defendant has not provided sufficiently exceptional evidence of his rehabilitation to warrant a reduction of his sentence."). Rather, as the Government astutely asserts: "The application of the Section 3553(a) [F]actors to [D]efendant's circumstances shows that an early release would not reflect[:] (a) the seriousness of the offenses for which she was convicted; and (b) the need for the sentence to be imposed to afford adequate deterrence for like criminal conduct. Therefore, the Section 3553(a) [F]actors militate against the requested relief." (Opp'n at 6.) The Court concurs.

Having considered the relevant Section 3553(a) Factors, the Court finds, as it originally did, "there is a strong need for [Defendant] to serve the sentence that was imposed." United States v. Santana, No. 15-CR-0457, 2021 WL 1999406, *4 (E.D.N.Y. May 19, 2021) (internal quotation omitted). Indeed, there is nothing before the Court that changes its original analysis of the Section

3553(a) Factors, especially given the low end of the Guidelines sentence imposed.  See, e.g., Latney, 2025 WL 1126474, at *11 (determining "Court's original consideration of the relevant Section 3553(a) Factors continue[d] to carry substantial weight").

> Rather, in its discretion, the Court finds, even if Defendant had presented extraordinary and compelling circumstances warranting compassionate release, which [s]he has not, the Section 3553(a) Factors would override those circumstances.  The Court's . . . [33]-month sentence of imprisonment continues to be appropriate to, inter alia: promote respect for the law; reflect the seriousness of the offense; provide just punishment; adequately deter criminal conduct; and protect the public from the Defendant, thereby satisfying the applicable Section 3553(a) Factors.

United States v. Hopkins, No. 18-CR-0606, 2024 WL 4388454, at *4 (E.D.N.Y. Oct. 2, 2024).  Relatedly, said sentence is among the best ways to communicate to the public that the guilty will be punished and required to serve their entire sentences.  See, e.g., Santana, 2025 WL 1940370, at *7 (ruling same; collecting cases).  In sum, Defendant's sentence of 33 months incarceration continues to be "sufficient, but not greater than necessary, to comply with the purposes of § 3553(a)."  (Statement of Reasons § VIII.)

[Remainder of page intentionally left blank.]

\*-\*-\*

To the extent not explicitly addressed herein, the Court has considered Defendant's remaining arguments for a sentence reduction and finds them to be without merit.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion (ECF No. 205) is **DENIED** in its entirety and without prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court mail a copy of this Order to the Defendant at the address noted under "Appearances" (see supra at 1), including the notation "LEGAL MAIL" on the mailing envelope;

**IT IS FURTHER ORDERED** that Defendant is to file a Notice of Change of Address with the Court by no later than September 5, 2025; hereafter, the Court will no longer "chase down" Defendant to ensure she is apprised of Court orders.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August 12, 2025
       Central Islip, New York